UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADAM BRADSTREET,<br><br>Plaintiff,<br><br>-against-<br><br>CITY OF ROCHESTER,<br><br>Defendant. | Case No. 6:23-cv-06147-EAW-CDH<br><br>**PLAINTIFF'S NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)** |

TO: DEFENDANT CITY OF ROCHESTER AND ITS ATTORNEYS OF RECORD

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 30(b)(6) and Rule 45, Plaintiff Adam Bradstreet will take the deposition upon oral examination of the CITY OF ROCHESTER (the "City") through one or more officers, directors, agents, or other representatives who shall be designated to testify on the City's behalf regarding all information known or reasonably available to the City with respect to the subject matters identified below.

This deposition shall be recorded by stenographic means and by videotape and shall commence at February 10 and 11, 2026 at 9:30AM at the offices of Michael Jos. Witmer, Esq., 28 East Main Street, Suite 900, Rochester, New York

14614, or at such other time and location as agreed upon by the parties, before a duly certified court reporter and notary public or other person authorized by law to administer oaths. The deposition will be subject to continuance or adjournment from time to time or place to place until completed.

Pursuant to Fed. R. Civ. P. 30(b)(6), the City is required to designate and fully prepare one or more officers, directors, managing agents, or other persons who consent to testify on behalf of the City, and whom the City will fully prepare to testify regarding the following designated matters and as to such information that is known or reasonably available to the City's organization.

The City is requested to provide written notice at least seven (7) business days before the deposition of the name(s), title(s), and employment position(s) of the individual(s) designated to testify on the City's behalf, and to identify which topics each designee will address.

## PRELIMINARY STATEMENT

Purpose and Scope of Rule 30(b)(6)

The City is obligated to produce one or more knowledgeable witnesses about the facts, issues, and matters referenced in this Notice. Doing so may require the designation of more than one person. For the purposes of this Notice and the requested deposition, the following legal principles govern the City's obligations:

1. Binding Testimony: The designated witness in a 30(b)(6) deposition is "speaking for the corporation," and this testimony is distinguished from that of a "mere corporate employee. The testimony elicited represents the knowledge of the City, not the individual deponents.
2. Duty to Prepare: The City must prepare its designee(s) to testify on all matters within the scope of the areas of inquiry known to or reasonably available to the City, including the City's subjective beliefs and opinions. The designee must be prepared to provide complete, knowledgeable, and binding answers on behalf of the corporation.
3. Preparation Requirements: The City's preparation should include a review of prior fact witness deposition testimony as well as documents and deposition exhibits, even if that review would be burdensome.
4. The City cannot avoid its Rule 30(b)(6) obligations by refusing to look for answers and then saying it does not know the answer. A thorough, reasonable investigation may require the City to rely on business records, other documents, interviews with present and former employees, and the like.
5. Substitution Requirement: If it becomes obvious during the course of the deposition that the designee is deficient, the City is obligated to provide a substitute.

6. Sanctions for Non-Compliance: Failing to produce a prepared and educated witness is "tantamount to nonappearance at a deposition, meriting the imposition of sanctions." The City may be precluded from offering testimony at trial on subjects its designee was unable or unwilling to testify about at the 30(b)(6) deposition.

## DEFINITIONS AND INSTRUCTIONS

In construing these topics, the following definitions and instructions shall apply:

A. Scope of Terms

All terms shall be construed to encompass as broad a range of information as permitted under the Federal Rules of Civil Procedure.

B. Defined Terms

1. "Plaintiff" refers to Adam Bradstreet.
2. "Defendant", "City", or "RPD" refers to the City of Rochester and the Rochester Police Department.
3. "Domestic Violence" means conduct that would constitute domestic violence or intimate partner violence under applicable law, department policy, or commonly understood law-enforcement definitions, including off-duty conduct.

4. "Discipline" or "Disciplinary Action" means any corrective or adverse action, including counseling, written reprimands, suspension, demotion, reassignment, loss of pay, loss of privileges, last-chance agreements, settlement agreements, resignation-in-lieu-of-termination, and termination.
5. "Complaint" means any allegation, report, complaint, tip, referral, or notice—formal or informal, verbal or written—of misconduct or policy violation.
6. "Comparator" or "Similarly Situated Officer" means any sworn officer or RPD employee who was charged with a crime and/or was the subject of a domestic violence allegation or incident and who was considered for, or received, discipline, including termination, from January 1, 2010 to the present.
7. "PSS" refers to the Professional Standards Section of the Rochester Police Department.
8. "Protected Class" refers to race, color, sex, gender, national origin, religion, age, disability, or status as a victim of domestic violence.
9. "Possession, custody, or control" includes all records to which the City or RPD has access, whether maintained by the City, RPD, or accessible through interagency channels, including but not limited to Monroe County courts, the Monroe County District Attorney's Office, New York State

Police databases, DCJS, or any other law enforcement or governmental agency.

10. "Document" or "record" has the meaning set forth in Plaintiff's Third Set of Discovery Demands served January 6, 2026.
11. "The Incident" refers to the events described in the Second Amended Complaint filed August 4, 2023 (Docket 16).
12. "Relevant Period" means January 1, 2010 through the present, unless otherwise specified.

C. Preparation Requirements

The City's designee(s) must be prepared to testify not only about facts within the City's knowledge, but also its subjective beliefs, opinions, interpretations of documents and events, and its position on factual disputes.

The designee(s) need not have firsthand knowledge of the events in question, but must be prepared through review of documents, interviews with current and former employees, review of prior deposition testimony, and any other means necessary to provide complete, knowledgeable, and binding answers.

D. Scope of Examination

While the topics below define the minimum scope of the City's preparation obligations, they do not limit the scope of permissible questioning. Rule 30(b)(6) cannot be used to limit what is asked of the designated witness at a deposition. The

description contained within this notice identifies the minimum to which a witness must be prepared to testify, not the maximum.

TOPICS FOR EXAMINATION

The City's designee(s) shall be prepared to address the following topics:

I. ORGANIZATIONAL STRUCTURE AND GOVERNANCE

Topic 1: The City of Rochester's organizational structure, including:

(a) The City's relationship to the Rochester Police Department;

(b) The City's relationship to the Rochester Police Locust Club, Inc.;

(c) The City's role in the finances and business activities of the Rochester Police Department;

(d) The identity, job title, and responsibilities of all persons who directed and/or supervised the business functions, day-to-day operations, and business activities of the City and RPD from January 1, 2020 to the present;

(e) The identity, job title, and responsibilities of all persons with authority to establish policy and make planning-level decisions for the City and RPD from January 1, 2016 to the present;

(f) The identity and role of every person who served as an executive officer, chief, deputy chief, or command staff member for RPD from January 1, 2016 to the present;

(g) The chain of command within RPD from January 1, 2016 to the present.

Topic 2: The identity, including current or last known contact information, of every member of the Rochester City Council from January 1, 2016 to the present.

II. PLAINTIFF'S EMPLOYMENT, DISCIPLINE, AND SEPARATION

Topic 3: All facts and circumstances relating to Plaintiff Adam Bradstreet's employment with the City and RPD, including:

(a) Plaintiff's hire date, initial assignment, and all subsequent assignments or transfers;

(b) Plaintiff's performance evaluations, awards, commendations, and disciplinary history;

(c) Plaintiff's training records and certifications;

(d) All complaints, allegations, or reports made by Plaintiff regarding misconduct by other RPD officers during his employment;

(e) All complaints, allegations, or reports made against Plaintiff during his employment;

(f) Plaintiff's compensation, benefits, leave accruals, and other terms and conditions of employment.

Topic 4: All facts and circumstances relating to the alleged domestic violence incident of October 5, 2020, in which Plaintiff was the victim, including:

(a) How the City and RPD learned of the incident;

(b) The decision to initiate a Professional Standards Section (PSS) investigation (PSS 20-1167);

(c) The decision to issue a Chief's no-contact order against Plaintiff on or about October 8, 2020, including who made the decision, the basis for the decision, and whether Alyssa Little requested such an order;

(d) The disclosure of Plaintiff's domestic incident report to uninvolved parties, including PSS Sergeant Brandon Ince's contact with Alyssa Little and her family members;

(e) Any investigation into the unauthorized disclosure of Plaintiff's domestic incident report;

(f) The City's and RPD's policies, practices, and training regarding officers as victims of domestic violence;

(g) The City's and RPD's policies regarding confidentiality of domestic incident reports and disclosure to third parties.

Topic 5: All facts and circumstances relating to PSS Investigation No. 20-1167, including:

(a) The scope and conduct of the investigation;

(b) The identity of all persons who participated in or supervised the investigation;

(c) All evidence gathered during the investigation;

(d) The investigative findings, including Sergeant William Gallagher's determination that the charge of "Conduct" was "unproveable";

(e) The penalty recommendations made by Sergeant Anthony DelVecchio, Lieutenant Jason Vislay, Lieutenant Gregory Bello, and Executive Deputy Chief Andre Anderson, including the basis for each recommendation;

(f) The decision by Interim Chief Cynthia Herriot-Sullivan to recommend Plaintiff's termination despite the finding that the charge was "unproveable";

(g) The selection and appointment of Hearing Officer Douglas J. Bantle after Chief Herriot-Sullivan had already recommended termination;

(h) Whether the investigation and charging decisions complied with RPD policies, the Collective Bargaining Agreement, and Civil Service Law.

Topic 6: All facts and circumstances relating to the disciplinary charges referred against Plaintiff on April 13, 2021, including:

(a) The decision to refer charges and who made that decision;

(b) The basis for each charge;

(c) The decision to confiscate Plaintiff's service weapon but not his badge or identification;

(d) The decision not to suspend Plaintiff at that time;

(e) All communications between command staff, Corporation Counsel, and the Locust Club regarding the charges;

(f) Whether progressive discipline was considered and, if not, why not.

Topic 7: All facts and circumstances relating to the disciplinary hearing scheduled for August 23, 2021, including:

(a) The scheduling of the hearing;

(b) All pre-hearing communications between the City, RPD, the Locust Club, and Plaintiff;

(c) What occurred at the hearing or why the hearing did not proceed;

(d) The decision to offer Plaintiff a "tentative resignation" arrangement;

(e) The City's understanding of what "tentative resignation" meant;

(f) Whether the City intended to negotiate Plaintiff's continued employment with the incoming Chief.

Topic 8: All facts and circumstances relating to the Settlement Agreement dated September 14, 2021, including:

(a) The negotiation and drafting of the agreement;

(b) All communications between the City, Corporation Counsel, the Locust Club, and Plaintiff or his representatives regarding the agreement;

(c) The City's understanding of the terms of the agreement, including the meaning of "tentative resignation";

(d) Whether the City made any promises or representations to Plaintiff beyond those contained in the written agreement;

(e) Whether the City intended to negotiate Plaintiff's reinstatement with the incoming Chief;

(f) The City's position on whether Plaintiff signed the agreement knowingly and voluntarily;

(g) All legal advice received regarding the agreement.

Topic 9: All facts and circumstances relating to Plaintiff's resignation dated December 6, 2021, including:

(a) All communications regarding Plaintiff's resignation;

(b) Whether the City considered the resignation voluntary;

(c) All separation paperwork and exit procedures;

(d) The calculation and payment of Plaintiff's final compensation, accrued leave, and benefits;

(e) Whether Plaintiff was paid all retroactive pay and COVID pay to which he was entitled.

Topic 10: All facts and circumstances relating to Plaintiff's request for reinstatement in or about November 2022, including:

(a) The City's receipt and review of the request;

(b) Who made the decision to decline reinstatement;

(c) The basis for declining reinstatement;

(d) All internal communications discussing the request;

(e) Whether the City considered 4 NYCRR § 5.4, which permits reinstatement within one year of resignation;

(f) Whether the City's decision was influenced by Plaintiff's discrimination complaints or this litigation.

III. DISCRIMINATION, DISPARATE TREATMENT, AND COMPARATOR EVIDENCE

Topic 11: The City's and RPD's policies, practices, and procedures regarding discipline of officers, including:

(a) All written and unwritten policies governing internal investigations;

(b) All written and unwritten policies governing the preferral of charges;

(c) All written and unwritten policies governing disciplinary hearings;

(d) All written and unwritten policies governing penalty determinations;

(e) All written and unwritten policies governing progressive discipline;

(f) All penalty guidelines, disciplinary matrices, or penalty recommendation charts used from January 1, 2010 to the present;

(g) How the City determines what penalty to impose for particular offenses;

(h) Whether the City applies progressive discipline consistently to all officers regardless of race, gender, or other protected characteristics.

Topic 12: All facts and circumstances relating to the treatment of officers who were arrested, charged with crimes, or involved in domestic incidents as compared to Plaintiff's treatment, including:

(a) The number of RPD officers who were arrested or charged with crimes from 2010 to the present, broken down by race, gender, rank, and years of service;

(b) The number of such officers who were terminated, suspended, or received other discipline;

(c) The number of such officers who were retained without discipline or with lesser discipline than termination;

(d) The number of such officers who resigned or retired in lieu of termination;

(e) Whether any such officers were offered progressive discipline that was not offered to Plaintiff;

(f) The City's explanation for any disparities in treatment.

Topic 13: All facts and circumstances relating to the discipline and employment status of the following officers specifically identified in the Second Amended Complaint and the Court's March 19, 2024 Decision and Order as comparators to Plaintiff:

(a) Officer Patrice Allen (black female accused of domestic menacing with a gun):

– The nature of the allegations against her;

- The investigation conducted;
- The penalty imposed, if any;
- Her current employment status;
- Why she was not terminated;
- How her treatment differed from Plaintiff's treatment and the basis for any difference;

(b) Officer Michael Cantu (Hispanic male accused of menacing with a gun):

- The nature of the allegations against him;
- The investigation conducted;
- The penalty imposed, if any;
- His current employment status;
- Why he was not terminated;
- How his treatment differed from Plaintiff's treatment and the basis for any difference;

(c) Officer Melanie Rivera (Hispanic female accused of aiding in illegal drug deals and giving her service weapon to her boyfriend for use in the drug trade):

- The nature of the allegations against her;
- The investigation conducted, including any New York State Police wiretap investigation;

- Whether she was promoted before being terminated;
- Why she was not terminated until after being caught a second time;
- How her treatment differed from Plaintiff's treatment and the basis for any difference;

(d) Deputy Chief Wayne Harris (alleged to have impregnated a minor):

- The nature of the allegations against him;
- Any investigation conducted;
- The penalty imposed, if any;
- His employment status;
- How his treatment differed from Plaintiff's treatment and the basis for any difference;

(e) Officer Steve Kovacic (alleged DWI):

- The nature of the allegations against him;
- The investigation conducted;
- The penalty imposed, if any;
- His current employment status;
- How his treatment differed from Plaintiff's treatment and the basis for any difference;

(f) Officer Kody Middlebrook (alleged burglary and assault):

- The nature of the allegations against him;

– The investigation conducted;

– The penalty imposed, if any;

– His current employment status;

– How his treatment differed from Plaintiff's treatment and the basis for any difference;

(g) Officer Ryan Hartley (alleged assault and domestic violence incident):

– The nature of the allegations against him;

– The investigation conducted;

– The penalty imposed, if any;

– His current employment status;

– How his treatment differed from Plaintiff's treatment and the basis for any difference;

(h) Officer Kevin Cummings (alleged domestic event):

– The nature of the allegations against him;

– The investigation conducted;

– The penalty imposed, if any;

– His current employment status;

– How his treatment differed from Plaintiff's treatment and the basis for any difference;

(i) Officers Brad Pike and Jordan Bracey (assault):

- The nature of the allegations against them;
- The investigation conducted;
- The penalty imposed, if any;
- Their current employment status;
- How their treatment differed from Plaintiff's treatment and the basis for any difference;

(j) Lieutenant Jeffrey LaFave (threatened to kill Naser Zenelovic in the Public Safety Building; October 15, 2020 elevator confrontation):

- The nature of all allegations against him;
- All investigations conducted;
- Whether a Chief's Stay Away Order was issued and subsequently withdrawn;
- The penalty imposed, if any;
- His current employment status;
- How his treatment differed from Plaintiff's treatment and the basis for any difference;

(k) Captain Naser Zenelovic (allegations of sexual harassment, stalking, appearing at Plaintiff's residence while on duty, filing false charges against Plaintiff):

- The nature of all allegations against him;

- All investigations conducted;
- The penalty imposed, if any;
- His separation from RPD and subsequent employment with Greece Police Department;
- How his treatment differed from Plaintiff's treatment and the basis for any difference;

(l) Officer Moses Robinson (allegedly suspended approximately 6 times over the course of his career):

- The nature of the allegations against him;
- The number and nature of suspensions;
- Why he was not terminated;
- His current employment status;
- How his treatment differed from Plaintiff's treatment and the basis for any difference.

Topic 14: All facts and circumstances relating to any other RPD officer who, from January 1, 2010 to the present:

(a) Was the subject of a domestic incident report (as victim or respondent);

(b) Was arrested or charged with menacing, assault, DWI, burglary, harassment, domestic violence, or any other criminal offense;

(c) Was investigated for giving a weapon to another person;

(d) Was investigated for conduct involving illegal drugs;

(e) Was investigated for sexual harassment or stalking;

(f) Was investigated for making threats against another officer;

(g) Was investigated for filing false charges or reports;

(h) Was investigated for any allegation that would constitute a crime if proven;

And for each such officer:

(i) The officer's name, rank, race, gender, and years of service;

(j) The nature of the allegation;

(k) The investigation conducted;

(l) The penalty imposed, if any;

(m) The officer's current employment status;

(n) How the officer's treatment compared to Plaintiff's treatment.

Topic 15: The City's explanation for why Plaintiff, a white male who was the victim of domestic violence and who was never convicted of any crime, was forced to resign while other officers who committed more serious offenses, including criminal conduct, were retained or received lesser discipline.

Topic 16: Whether the City and RPD have ever disciplined, terminated, or forced the resignation of any other officer who was the victim of domestic violence, and if so, the circumstances of such discipline.

Topic 17: Statistical data regarding officer discipline from January 1, 2010 to the present, including:

(a) The total number of officers disciplined, broken down by race, gender, rank, and years of service;

(b) The types of offenses for which officers were disciplined;

(c) The penalties imposed, broken down by type of offense, race, gender, rank, and years of service;

(d) Any statistical analyses, reports, or studies of disparities in discipline;

(e) Any audits, reviews, or assessments identifying or analyzing disparities in discipline based on race, gender, or other protected characteristics.

IV. RETALIATION AND WHISTLEBLOWER CLAIMS

Topic 18: All facts and circumstances relating to Plaintiff's reports of misconduct by other RPD officers, including:

(a) Plaintiff's October 2020 report to Sergeant Anthony DelVecchio regarding misconduct by Officers Zenelovic, LaFave, Cantu, and Allen;

(b) Plaintiff's March 30, 2021 report to RPD internal affairs regarding LaFave and Zenelovic;

(c) Any other reports of misconduct made by Plaintiff;

(d) How the City and RPD responded to Plaintiff's reports;

(e) Whether any investigations were initiated based on Plaintiff's reports;

(f) Whether Plaintiff was retaliated against for making these reports;

(g) The City's policies and procedures for handling whistleblower complaints.

Topic 19: All facts and circumstances relating to the Harris Street incident of January 30, 2021, including:

(a) Plaintiff's role in the incident;

(b) Any investigation of Plaintiff's conduct;

(c) Plaintiff's exoneration on August 12, 2021 of all disciplinary charges involving the Harris Street incident;

(d) Plaintiff's request for police protection at his home following the incident;

(e) The denial of Plaintiff's request for protection;

(f) Whether other officers involved in the incident received protection;

(g) Any media coverage or public statements regarding the incident;

(h) Whether Plaintiff was targeted for termination because of his involvement in the incident.

Topic 20: All facts and circumstances relating to Plaintiff's emails to the City Office of Public Integrity dated February 14, 2022 and July 23, 2022, including:

(a) The City's receipt and review of the emails;

(b) Any investigation conducted in response;

(c) All internal communications regarding Plaintiff's allegations;

(d) The City's response or lack of response to Plaintiff.

V. DISCRIMINATION COMPLAINTS AND LITIGATION

Topic 21: All facts and circumstances relating to Plaintiff's New York State Division of Human Rights complaint filed April 8, 2022, including:

(a) The City's receipt of the complaint;

(b) The City's investigation and response;

(c) The City's Position Statement dated April 14, 2022;

(d) All internal communications regarding the complaint;

(e) The City Corporation Counsel's demand on June 15, 2022 that Plaintiff withdraw his complaint within 7 days;

(f) The basis for that demand.

Topic 22: All facts and circumstances relating to EEOC Charge No. 16G-2022-02067 filed by Plaintiff, including:

(a) The City's receipt of the charge;

(b) The City's investigation and response;

(c) All documents provided to the EEOC;

(d) All internal communications regarding the charge;

(e) The EEOC's Determination and Notice of Rights dated November 30, 2022.

Topic 23: All facts and circumstances relating to the revocation of Plaintiff's pistol permit, including:

(a) The decision to seek revocation and who made that decision;

(b) The timing of the decision (four days after the City received Plaintiff's discrimination complaint);

(c) Chief David Smith's letter to Monroe County Court dated April 12, 2022;

(d) Daniel Nowack's letter from RPD Firearms Investigation Unit;

(e) All communications between RPD, the City, Corporation Counsel, and Monroe County Court regarding the revocation;

(f) All documents provided to Monroe County Court in support of revocation;

(g) Whether the decision to seek revocation was retaliatory;

(h) The City's knowledge that revoking Plaintiff's pistol permit would prevent him from working as a police officer anywhere;

(i) Chief Smith's failure to appear at the pistol permit hearings despite being requested by the Court to appear.

Topic 24: All facts and circumstances relating to Chief David Smith's correspondence dated July 19, 2022 with Plaintiff's ex-girlfriend Alyssa Little regarding her testimony for Plaintiff, including:

(a) The decision to send the correspondence;

(b) The purpose of the correspondence;

(c) Whether the correspondence was intended to intimidate or retaliate against a witness;

(d) Whether the City has ever sent similar correspondence to any other witness in any other matter.

VI. POLICIES, PROCEDURES, AND TRAINING

Topic 25: The City's and RPD's policies, procedures, and training regarding discrimination, including:

(a) All anti-discrimination policies;

(b) All equal employment opportunity policies;

(c) All training materials provided to officers and command staff;

(d) All complaint procedures for discrimination;

(e) All investigation procedures for discrimination complaints;

(f) The City's and RPD's compliance with Title VII and the New York State Human Rights Law.

Topic 26: The City's and RPD's policies, procedures, and training regarding domestic violence, including:

(a) Policies regarding officers as victims of domestic violence;

(b) Policies regarding officers as respondents in domestic violence incidents;

(c) Victim rights and victim services available to officers;

(d) Confidentiality of domestic incident reports;

(e) Disclosure of domestic incident reports to third parties;

(f) Training provided to officers and command staff;

(g) Whether the City treats male victims of domestic violence differently than female victims.

Topic 27: The City's and RPD's policies, procedures, and training regarding whistleblower protections and Civil Service Law § 75-b, including:

(a) Policies protecting officers who report misconduct;

(b) Procedures for investigating reports of misconduct;

(c) Policies prohibiting retaliation against whistleblowers;

(d) Training provided to officers and command staff;

(e) Any violations of these policies from 2010 to the present.

Topic 28: The City's and RPD's policies regarding notification requirements when officers are arrested, charged with crimes, or involved in domestic incidents, including:

(a) Whether officers have an obligation to notify the City/RPD;

(b) Whether the City/RPD receives automatic notification from other law enforcement agencies;

(c) Whether the City/RPD receives notification from DCJS;

(d) Whether the City/RPD receives notification from courts;

(e) How such notifications are documented and maintained;

(f) Whether the City maintains records of officer arrests and charges even when no PSS investigation is initiated.

Topic 29: The City's and RPD's document retention and destruction policies, including:

(a) Policies governing retention of personnel files;

(b) Policies governing retention of PSS investigation files;

(c) Policies governing retention of disciplinary records;

(d) Policies governing retention of domestic incident reports;

(e) Policies governing retention of electronic communications (emails, text messages, etc.);

(f) Policies governing retention of video and audio recordings;

(g) Any destruction of documents relating to Plaintiff;

(h) Any destruction of documents relating to comparator officers.

VII. ELECTRONICALLY STORED INFORMATION AND RECORDS SYSTEMS

Topic 30: The City's and RPD's electronic mail systems, including:

(a) The electronic mail system(s) used by the City and RPD from January 1, 2020 to the present;

(b) The physical locations of email servers;

(c) Whether the email system is hosted by a third party;

(d) How the email system is configured (IMAP, POP, etc.);

(e) Whether client systems are configured to store email locally;

(f) Preservation, archive, and disaster recovery systems;

(g) Security applications that log information pertaining to email transmissions;

(h) The City's electronic records management policies and procedures;

(i) The City's retention and destruction policies for emails;

(j) Who has access to network administration, backup, archiving, or other system operations.

Topic 31: The description, existence, purpose, custody, location, organization, indexing, filing, and available methods of search for the following documents and electronically stored information:

(a) Personnel files for all RPD officers;

(b) PSS investigation files;

(c) Disciplinary records;

(d) Domestic incident reports;

(e) Criminal arrest and charge records for RPD officers;

(f) Communications between RPD and other law enforcement agencies;

(g) Communications between RPD and the Monroe County District Attorney's Office;

(h) Any databases, spreadsheets, or tracking systems for officer discipline;

(i) Any databases, spreadsheets, or tracking systems for officer arrests or criminal charges;

(j) The “Concise Histories” or “Concise Records” provided to prosecutors;

(k) Any Giglio materials, Brady materials, or prosecutorial disclosure materials;

(l) Any files or folders on the “K:Drive,” “H:Drive,” or any other network drive containing officer discipline or credibility information.

VIII. GIGLIO, BRADY, AND PROSECUTORIAL DISCLOSURE

Topic 32: All facts and circumstances relating to the City’s and RPD’s obligations to disclose officer credibility, discipline, or misconduct information to prosecutors, including:

(a) All policies, procedures, or protocols governing such disclosures;

(b) All agreements, memoranda of understanding, or protocols between RPD and the Monroe County District Attorney’s Office regarding disclosure of officer discipline, arrests, or credibility issues;

(c) The “Concise Histories” or other documents provided to the Monroe County District Attorney’s Office;

(d) The physical or electronic storage location of Giglio materials, Brady materials, or prosecutorial disclosure materials;

(e) Who has access to such materials;

(f) How such materials are created, maintained, and updated;

(g) All officers who have been subject to Giglio disclosure from 2010 to the present;

(h) Whether Plaintiff was ever placed on a Giglio list;

(i) Whether Plaintiff's name was disclosed to prosecutors as an officer with credibility issues;

(j) Any list, spreadsheet, database, or compilation of civil lawsuits against RPD officers provided to prosecutors.

IX. COMPENSATION, BENEFITS, AND DAMAGES

Topic 33: The compensation structure for Rochester Police Department officers from September 26, 2016 to the present, including:

(a) All salary schedules, pay scales, and wage tables;

(b) All across-the-board raises, cost-of-living adjustments, or general wage increases;

(c) All step increases, longevity pay schedules, and anniversary increases;

(d) All shift differentials, hazard pay, or premium pay schedules;

(e) All educational incentive pay schedules;

(f) All field training officer pay differentials;

(g) All retroactive pay agreements or payments;

(h) All COVID-related pay, hazard pay, or pandemic compensation;

(i) How officers in Plaintiff's recruit class (hired September-December 2016) have been compensated from hire to present.

Topic 34: Pension and retirement benefits for Rochester Police Department officers, including:

(a) The New York State Policemen's and Firemen's Retirement System;

(b) Pension tiers, contribution rates, and vesting schedules;

(c) Final average salary calculations;

(d) Service credit calculations;

(e) Disability retirement benefits;

(f) Survivor benefits;

(g) Plaintiff's pension account and contributions made from September 26, 2016 to December 6, 2021;

(h) Projected pension benefits Plaintiff would have received had he remained employed;

(i) Any pension forfeiture or loss suffered by Plaintiff due to his separation.

Topic 35: Health insurance and other fringe benefits for Rochester Police Department officers, including:

(a) All health insurance plans (medical, dental, vision) from 2016 to present;

(b) Employee and City contribution rates;

(c) Coverage levels and costs;

(d) Continuation of benefits for retirees;

(e) Deferred compensation plans;

(f) Life insurance and disability insurance;

(g) Uniform and equipment allowances;

(h) Tuition reimbursement and educational benefits;

(i) Legal defense and indemnification benefits;

(j) The value of benefits Plaintiff lost due to his separation.

Topic 36: Leave benefits and accruals for Rochester Police Department officers, including:

(a) Vacation accrual rates and schedules;

(b) Sick leave accrual rates and schedules;

(c) Personal leave policies;

(d) Compensatory time policies;

(e) Holiday pay policies;

(f) Plaintiff's complete leave accrual records from September 26, 2016 to December 6, 2021;

(g) Any payout of accrued leave to Plaintiff upon separation;

(h) Any leave benefits forfeited by Plaintiff upon separation.

Topic 37: Promotional opportunities and career advancement for Rochester Police Department officers, including:

(a) Promotional examination procedures and schedules;

(b) Eligibility requirements for promotion;

(c) Salary increases associated with each promotion (Investigator, Sergeant, Lieutenant, Captain);

(d) Promotional history of officers in Plaintiff's recruit class;

(e) Whether Plaintiff was eligible for promotion;

(f) Whether Plaintiff would have been promoted but for his termination;

(g) The economic value of lost promotional opportunities.

Topic 38: The calculation of damages in this case, including:

(a) Any calculation of back pay owed to Plaintiff;

(b) Any calculation of front pay or future lost earnings;

(c) Any calculation of lost pension benefits;

(d) Any calculation of lost health insurance benefits;

(e) Any economic analysis performed by the City regarding this litigation;

(f) Any reserve or valuation of this case for insurance or budgetary purposes;

(g) The present value of Plaintiff's lost pension benefits;

(h) The present value of Plaintiff's lost future earnings;

(i) What Plaintiff's total compensation would have been from December 6, 2021 to the present had he remained employed;

(j) What Plaintiff's total compensation would be from the present through age 47 (20 years of service/pension eligibility) and through normal retirement age.

X. AFFIRMATIVE DEFENSES AND CONTENTIONS

Topic 39: All facts supporting the City's First Affirmative Defense that "The Complaint fails, in all respects, to state any causes of action for which relief may be granted against the City Defendants."

Topic 40: All facts supporting the City's Second Affirmative Defense that "the damages alleged in the Complaint were caused in whole or in part by the acts or omissions to act of the plaintiff, which acts or omissions to act were negligent, reckless, wrongful, intentional or otherwise culpable."

Topic 41: All facts supporting the City's Third Affirmative Defense regarding comparative fault and diminution of damages.

Topic 42: All facts supporting the City's Fourth Affirmative Defense that "The Complaint represents an effort to state a cause of action cognizable under 42 U.S.C. §§1983 and 1985 and fails."

Topic 43: All facts supporting the City's Fifth Affirmative Defense regarding good faith exercise of discretion and immunity from common-law liability.

Topic 44: All facts supporting the City's Sixth Affirmative Defense that "The City of Rochester did not authorize, condone, permit or ratify any allegedly improper or malicious conduct on the part of any person or adopt any policy condoning such conduct."

Topic 45: All facts supporting the City's Seventh Affirmative Defense regarding justification, privilege, probable cause, and accordance with law.

Topic 46: All facts supporting the City's Eighth Affirmative Defense that "the plaintiff breached his employment terms and employment contract with the City of Rochester, both under New York State Civil Service Law, common law and the Civil Rights Law."

Topic 47: All facts supporting the City's Ninth Affirmative Defense regarding immunity and good-faith belief.

Topic 48: All facts supporting the City's Tenth Affirmative Defense regarding justification and reasonable belief.

Topic 49: All facts supporting the City's Eleventh Affirmative Defense that "plaintiff has not set forth sufficient facts to demonstrate that he has a property right recognizable under the common law or the due process clauses of the Fifth and Fourteenth Amendment of the United States Constitution, nor a legal interest recognizable under the Privileges and Immunities clause of the United States Constitution."

Topic 50: All facts supporting the City's Twelfth Affirmative Defense that "the plaintiff's allegations fail to show a likelihood of success on the merits of any of its causes of action."

Topic 51: All facts supporting the City's Thirteenth Affirmative Defense regarding qualified privilege.

Topic 52: All facts supporting the City's Fourteenth Affirmative Defense regarding probable cause, good faith, and absence of malice.

Topic 53: All facts supporting the City's Fifteenth Affirmative Defense that "Plaintiff is barred from initiating and maintaining this action based on the Plaintiff's Settlement Agreement with the City of Rochester," including:

(a) The City's position on the enforceability of the Settlement Agreement;

(b) The City's position on whether Plaintiff signed the agreement knowingly and voluntarily;

(c) The City's position on whether the agreement was procured by fraud, duress, or misrepresentation;

(d) The City's position on whether the agreement bars each of Plaintiff's claims;

(e) All facts supporting the City's contention that the agreement is enforceable.

XI. DISCOVERY RESPONSES AND DOCUMENT PRODUCTION

Topic 54: The City's responses to Plaintiff's First Set of Document Requests served April 27, 2024, including:

(a) The City's search for responsive documents;

(b) The custodians whose files were searched;

(c) The search terms or methods used;

(d) Any documents withheld on the basis of privilege;

(e) Any documents the City contends do not exist or are not in its possession, custody, or control;

(f) The City's objections to the requests and the basis for each objection.

Topic 55: The City's responses to Plaintiff's Second Set of Document Requests served October 3, 2024, including:

(a) The City's search for responsive documents;

(b) The custodians whose files were searched;

(c) The search terms or methods used;

(d) The City's representation in its October 28, 2025 email that it searched "all available City of Rochester files" and found discipline investigations for only certain named officers;

(e) The City's position that it does not have records for the other officers requested;

(f) Whether the City searched personnel files for all requested officers;

(g) Whether the City searched for police reports in which the requested officers were suspects or subjects;

(h) Whether the City contacted other law enforcement agencies for records;

(i) Whether the City searched DCJS or other databases;

(j) Any documents withheld on the basis of privilege;

(k) The City's objections to the requests and the basis for each objection.

Topic 56: The City's responses to Plaintiff's email demand of October 16, 2025, including:

(a) The City's understanding of its obligation to produce "any and all documents, reports, memoranda, or records in the possession, custody, or control of the City of Rochester, the Rochester Police Department, or any of their agents, relating to any criminal arrest, charge, prosecution, or disciplinary action involving any current or former Rochester Police Department officer";

(b) The City's interpretation of "possession, custody, or control" as including "all records to which the City or RPD has access through interagency channels, including Monroe County courts, District Attorney's Office, New York State Police databases, DCJS, or any other law enforcement or governmental database or information-sharing arrangement";

(c) Whether the City has access to such interagency records;

(d) Whether the City searched such interagency records;

(e) If not, why not;

(f) The City's position on whether it has an obligation to search such records.

Topic 57: The City's responses to Plaintiff's Third Set of Document Requests served January 6, 2026, including all matters addressed in Topics 54-56 above.

Topic 58: The City's position on the following questions raised in Plaintiff's October 16, 2025 correspondence:

(a) Whether the City is notified when a police officer is involved in a domestic incident and whether the City has records of such incidents;

(b) Whether the City is notified when a police officer is charged with a violation or a crime in New York State or Federal Court and whether the City has records of such charges;

(c) Whether officers have an obligation to notify the City/RPD if they are involved in a domestic incident;

(d) Whether officers have an obligation to notify the City/RPD if they are charged with a violation-level offense or crime;

(e) Whether there would be evidence of these events (through police reports, court documents, internal memoranda, etc.) in City/RPD records;

(f) Whether there would be notification to superiors, the Chief of Police, or Corporation Counsel when an RPD officer is charged;

(g) Whether DCJS notifies RPD when an officer is charged.

Topic 59: The City's production of 512 pages of discovery on April 9, 2025, including:

(a) What documents were produced;

(b) What custodians' files were searched;

(c) Why no records relating to the comparator officers' misconduct were included;

(d) The City's position on whether it has such records;

(e) The City's position on whether it is obligated to produce such records.

Topic 60: The adequacy and completeness of the City's discovery responses, including:

(a) Whether the City has produced all responsive documents in its possession, custody, or control;

(b) Whether the City has conducted a reasonable search for responsive documents;

(c) Whether the City has any additional responsive documents that have not been produced;

(d) The City's position on any disputes regarding the scope or adequacy of its production.

XII. SETTLEMENT NEGOTIATIONS AND MEDIATION

Topic 61: All facts and circumstances relating to settlement negotiations and mediation in this case, including:

(a) All settlement offers or demands made by either party;

(b) All mediation sessions and communications with the mediator;

(c) The City's valuation of this case;

(d) The City's assessment of its likelihood of success on its affirmative defenses;

(e) The City's assessment of Plaintiff's likelihood of success on his claims;

(f) Any barriers to settlement.

XIII. RELATED LITIGATION AND SIMILAR CLAIMS

Topic 62: All facts and circumstances relating to the litigation filed by Officer Aaron Wilcox in Monroe County Supreme Court on April 26, 2023 (referenced in the Second Amended Complaint as Exhibit 3), including:

(a) The City's knowledge of the similarities between Wilcox's allegations and Plaintiff's allegations;

(b) The City's response to Wilcox's complaint;

(c) The status and disposition of the Wilcox litigation;

(d) Whether the City has changed any policies or practices in response to the Wilcox litigation.

Topic 63: All other litigation against the City or RPD from 2010 to the present alleging:

(a) Discrimination based on race, gender, or status as a domestic violence victim;

(b) Retaliation for whistleblowing or reporting misconduct;

(c) Violation of Civil Service Law § 75-b;

(d) Constructive discharge;

(e) Breach of contract or due process violations;

(f) Abuse of process;

(g) Any similar claims to those asserted by Plaintiff.

Topic 64: All Division of Human Rights complaints against RPD involving RPD employees from 2010 to the present, including:

(a) The nature of the complaints;

(b) The investigations conducted;

(c) The findings and determinations;

(d) Any remedial actions taken.

XIV. SPECIFIC INCIDENTS AND INVESTIGATIONS

Topic 65: All facts and circumstances relating to the altercation between Officers Jeffrey LaFave and Naser Zenelovic, including:

(a) The nature of the altercation;

(b) Any investigation conducted;

(c) Any discipline imposed;

(d) Any Chief's Stay Away Order issued;

(e) The withdrawal or cancellation of any such order;

(f) Why the investigation was "pulled" by Chief Cynthia Herriot-Sullivan.

Topic 66: All facts and circumstances relating to any sexually explicit recording involving Captain Naser Zenelovic, including:

(a) The existence of such a recording;

(b) How RPD became aware of the recording;

(c) Any investigation conducted;

(d) Any discipline imposed;

(e) Whether the recording was disseminated among RPD officers.

Topic 67: All facts and circumstances relating to Captain Naser Zenelovic's conduct at Plaintiff's residence while on duty, including:

(a) How RPD learned of this conduct;

(b) Any investigation conducted;

(c) Any discipline imposed;

(d) Whether this conduct was considered stalking or harassment.

Topic 68: All facts and circumstances relating to false charges filed against Plaintiff by Captain Naser Zenelovic regarding the April 11, 2020 incident, including:

(a) The nature of the charges;

(b) The investigation that revealed the charges were false;

(c) Any discipline imposed on Zenelovic for filing false charges;

(d) The removal of the charges from Plaintiff's record;

(e) Why Zenelovic was given only "remedial training" for filing false charges.

XV. ADDITIONAL MATTERS

Topic 69: All facts and circumstances relating to Executive Deputy Chief Andre Anderson's employment with RPD, including:

(a) His hiring and background investigation;

(b) Whether he was ever an RPD officer or certified in New York State;

(c) His salary and compensation (including the allegation that he requested "almost a half of a million dollars");

(d) Any prior suspensions or disciplinary actions from previous employment;

(e) Any orders of protection involving Anderson;

(f) Any allegations of falsifying documents;

(g) Any NBC News articles or media reports regarding Anderson.

Topic 70: All facts and circumstances relating to Interim Chief Cynthia Herriot-Sullivan's qualifications and authority, including:

(a) Whether she was certified to serve as Chief;

(b) Whether she was certified to carry a duty firearm;

(c) Her authority to recommend termination;

(d) Her authority to appoint a hearing officer after recommending termination.

Topic 71: All facts and circumstances relating to any communication between the City, RPD, or Corporation Counsel and any law enforcement agency regarding Plaintiff's application for employment, including communications with all agencies listed in Plaintiff's Rule 26 Disclosure.

Topic 72: All facts and circumstances relating to any "blacklisting," "do not hire" list, or other communication that would prevent or discourage other law enforcement agencies from hiring Plaintiff.

Topic 73: All facts and circumstances relating to the City's investigation of Plaintiff's post-separation employment, including:

(a) Any investigation of Plaintiff's efforts to find comparable employment;

(b) Any surveillance of Plaintiff;

(c) Any social media monitoring of Plaintiff;

(d) Any communications with prospective employers of Plaintiff.

Topic 74: The City's policies and practices regarding settlement agreements and separation agreements with officers, including:

(a) How many officers have entered into such agreements from 2010 to the present;

(b) The typical terms of such agreements;

(c) Whether such agreements typically include general releases;

(d) Whether such agreements typically include confidentiality provisions;

(e) Whether officers are advised to consult with independent counsel before signing;

(f) Whether the City considers such agreements to bar discrimination claims.

Topic 75: All facts and circumstances relating to any insurance coverage, indemnification, or defense of the City in this action, including:

(a) Whether the City is self-insured;

(b) Any insurance policies that may provide coverage;

(c) Any reservation of rights by any insurer;

(d) Any coverage disputes.

<u>DOCUMENT PRODUCTION PURSUANT TO FED. R. CIV. P. 30(b)(2)</u>

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), Plaintiff requests that the City's designee(s), responsive to this deposition

notice, produce at the time of the deposition the following categories of documents:

1. All documents reviewed by the designee(s) in preparing for the deposition;
2. All documents referenced in the designee(s)' testimony;
3. All organizational charts for RPD from January 1, 2020 to the present;
4. All written policies and procedures referenced in the topics above;
5. All statistical summaries, reports, or analyses of discipline referenced in the topics above;
6. All penalty guidelines, disciplinary matrices, or penalty recommendation charts;
7. The complete PSS Investigation File No. 20-1167;
8. The complete personnel file for Plaintiff;
9. All documents relating to the Settlement Agreement dated September 14, 2021;
10. All documents relating to Plaintiff's resignation dated December 6, 2021;
11. All documents relating to Plaintiff's request for reinstatement;
12. All documents relating to the revocation of Plaintiff's pistol permit;
13. All salary schedules, pay scales, and compensation records referenced in the topics above;
14. All documents relating to the City's affirmative defenses;

15. All documents relating to the City's discovery responses;
16. Any privilege log for documents withheld from production.

RESERVATION OF RIGHTS

Plaintiff reserves the right to:

1. Depose the City's designee(s) on additional topics upon proper notice;
2. Depose individual City employees with personal knowledge of relevant facts pursuant to Fed. R. Civ. P. 30(b)(1);
3. Seek leave of Court to conduct additional depositions beyond the limits set forth in the parties' discovery plan upon a showing of good cause;
4. Move to compel the City to designate a substitute witness if any designee is not adequately prepared;
5. Seek sanctions if the City fails to comply with its obligations under Fed. R. Civ. P. 30(b)(6);
6. Use the testimony of the City's designee(s) to bind the City at trial and in any dispositive motions;
7. Seek to preclude the City from offering testimony at trial on any topic on which its designee(s) testified that the City lacked knowledge.

DATED: January 6, 2026
Rochester, New York

MICHAEL JOS. WITMER, ESQ.
s/Michael Jos. Witmer
Michael Jos. Witmer, Esq.
Attorney for Plaintiff
28 E. Main Street, Suite 900
Rochester, New York 14614
Tel.: (585) 325-2352
Fax: (585) 351-2442
michael@therochesterattorney.com

TO: John M. Campolieto, Esq.
Rochester Corporation Counsel
30 Church Street, Room 400A
Rochester, New York 14614
Via Email and personal service: John.Campolieto@cityofrochester.gov